# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
## San Jose Venue

**UNITED STATES OF AMERICA)**
    VS.    ) Docket Numbers: CR 19-00159 EJD
         )
         ) Sentence Date: April 6, 2020
         )
**Reyes Daniel RUIZ**    )

## *ALTERNATIVE PRESENTENCE REPORT*

**Prepared for:**
**Honorable Edward J. Davila**
United States District Judge

**Assistant United States Attorney**
Daniel Kaleba
150 Almaden Boulevard, Suite 900
San Jose, California 95113
(408) 535-5061

**Defense Counsel**
Mary Ann F. Bird (Retained)
2111 W. March Lane, B-300
Stockton, California 95207
(209) 478-9950

**Offense:** Indictment: Count One: 18 U.S.C. 1030(a)(2)(C) and (c)(2)(B)(ii) Computer Intrusion to Obtain Private Information

**Penalty:** 5 years; $250,000; 3 years TSR; Restitution TBD; $100 S.A.

**Date of Offense:** May 18, 2018- June 20, 2018

**Date of Arrest:** Defendant was not arrested.

**Release Status:** On bond w/ PTS supervision

**Co-Defendants:** None

## IDENTIFYING DATA

**Date of Birth:** ███████
**Age:** 34
**Place of Birth:** Moyahau, Zacatecas, Mexico
**Citizenship:** United States (Naturalized in 2007)
**Race:** Hispanic
**Sex:** Male
**Height:** 5'7"
**Weight:** 145
**Eyes:** Brown
**Hair:** Brown
**Distinguishing Marks:** None
**Social Security #:** ███████

**Legal Address:** ███████

## PART A. THE OFFENSE

### Charges and Convictions

On September 30, 2019, the defendant plead guilty to Count 1 of a Two Count Indictment alleging violation of Title 18 USC 1030(a)(2)(C) and (c)(2)(B)(ii) – Computer Intrusion to Obtain Private Information
To be dismissed at time of sentencing is Count 2, violation of Title 18 USC 2511 (1)(a) and (4)(a) – Interception of Wire or Electronic Communications.

### Pretrial Supervision

On April 10, 2019, the defendant appeared voluntarily in Magistrate Court and was released on bond the same day with Pretrial supervision. There have been no supervision issues during his tenure with Pretrial services.

### Offense Conduct

(The following information was gleaned from the Plea Agreement prepared by the government and signed by the defendant as factually true)

The defendant was an engineer with Yahoo, Inc. beginning in 2008. Prior to his arrest, the defendant worked on the mail engineering team, which had access to private and sensitive user account data. Because of his training with Yahoo (and later its successor, Oath, Inc.) the defendant had special knowledge about account authentication and email infrastructure.

Between 2012 and 2015, the defendant used his special knowledge and skills to access approximately 6,000 user accounts of younger women he knew through Facebook, personal Yahoo contacts, friends of friends and going through employee directories for persons he found interesting. Once in the email accounts, the defendant would look at financial documents but especially private sexual images and videos stored in these accounts. He would eventually download these images and videos, at any one time between 1,000-4,000 images and videos, without the victim's permission, to his hard drive.

Additionally, the defendant during this time used his unauthorized access to more than 100 private iCloud, Hotmail, Drop Box, Gmail and Photobucket accounts. He searched these accounts to find more sexual images and videos of the victims, and to additionally search for more persons to target.

On June 21, 2018, Oath mail engineers were alerted to suspicious account activities. On the same date, the defendant became aware of this discovery and left early from work. Upon arriving at home, the defendant immediately began destroying all evidence he had in his residence. This included the hard drive that contained the stored images and videos of the victims and his list of future victims whose accounts he planned to breach.

On August 24, 2018, FBI agents arrived at the defendant's residence to execute a search warrant. Soon after their arrival the defendant alerted the agents that he had destroyed the hard drive containing the evidence they sought and he had done that to avoid prosecution.

### Victim Impact

Of the approximately 6,000 victims in this matter, the government has identified 3,137. Because the defendant destroyed the hard drive the identity of the remaining victims is unknown.

Yahoo, Inc. and Oath Holding have reported total losses of $115,957.01

### Defendants Statement

Immediately when contacted by the FBI at his residence on August 24, 2018, the defendant began cooperating by acknowledging he had destroyed his hard drive containing the videos and images. He has continued to assist the government by meeting with agents in their continued investigation of this offense.

He further relates that none of the images or videos were shared. The defendant also stresses that he has never had any interest, nor did he take any action, to contact or meet the victims. He used the videos and images solely for his own self-gratification for which he is now very ashamed and remorseful.

**Offense Level Computations**

**Base Offense Level:** The guideline for violation of Title 18 U.S.C. 1030(a)(2)(C) and (c)(2)(B)(ii) - Computer Intrusion to Obtain Private Information is found at USSG 2B1.1 (a) (2). The base offense level is 6:　　　　6

**Specific Offense Characteristics pursuant to USSG Chapter 2:**

1- If the loss is $95,000 but less than $150,000, USSG 2B1.1 (b)(1)(E) calls for an 8 level increase:　　+8
2- If there are 10 or more victims, USSG 2B1.1(b)(2)(A) states 2 levels are to be added:　　+2
3- Pursuant to a conviction under Title 18:1030 and intent to obtain personal information the USSG 2B1.1(b)(18) requires an additional 2 level increase:　　+2

**Adjustments pursuant to USSG Chapter 3:**

If the defendant obstructed justice, USSG 3C1.1 requires an additional 2 levels be added:　　+2

**Adjusted Offense Level (Subtotal):**　　20

**Adjustment for Acceptance of Responsibility:** Pursuant to USSG 3E 1.1 (a) if the defendant clearly demonstrates acceptance of responsibility for his involvement in the offense, a 2 level reduction in offense level may be granted.　　-2

Additionally, the offense level may be reduced another level if the defendant timely notifies the government and Court of his desire to plead guilty. The defendant appears to have done so in this case. Therefore a 1-level reduction appears to be appropriate.　　-1

**Total Offense Level:**　　17

## PART B. DEFENDANT'S CRIMINAL HISTORY

### Juvenile Adjudications

None

### Adult Criminal Convictions

None

### Criminal History Computations

The criminal history convictions above result in a criminal history score of 0.

The total of the criminal history points is 0. According to the sentencing table at USSG Chapter 5, Part A, 0 criminal history points establish a criminal history category of I.

## PART C. OFFENDER CHARACTERISTICS

### Personal and Family Data

**Current Situation:** Reyes Daniel Ruiz resides in Tracy, California, with his wife Alicia Guerrero. Alicia lived in a neighboring town in Mexico were they met at a dance, dated for about 18 months then married. They have lived at their present location since 2012. Prior to that they resided in Freemont, California for 4 years. Presently Reyes is trying to find permanent, full time employment but thus far has only been able to locate temporary jobs. Alicia has found employment doing janitorial work as an office cleaner.

**Family History:** The defendant is the only child born to the union of Ramon Ruiz and Ramona Santellan. His father had eight other children from different women before Reyes was born. Reyes was born in Moyahua, Zacatecas, Mexico. His father was a field worker, coming to the United States as a resident alien during different agricultural seasons to work. At the age of 55 the father had a heart attack and returned to Mexico to live the rest of his life in Mexico with his wife Ramona. Both are now deceased. At the age of 6 the defendant was granted a United States resident alien card. He would come intermittently to the United States to visit his stepbrothers and sisters who

resided here. At the age of 16 Reyes came to live with his stepbrother, Javier, who at that time resided in Hayward, California.

The defendant describes his childhood as normal. In 2007, at the age of 22, Reyes married his wife, Alicia Guerrero. They have no children. Although his wife has been very disappointed for Reyes conduct in this matter, she plans to remain with him and is supportive. Presently she works full time as a custodian earning $15 an hour and is their primary income at this time. Reyes is receiving unemployment benefits.

In 2007 Reyes obtained his United States citizenship.

The Court has been provided several letters from Reye's family and friends. They each know of his situation and continue to respect and support him. In their letters, some list events, moments, feelings and actions that have made Reyes that special person in their life.

### Physical Condition

The defendant has no health problems and does not take any prescribed medication.

### Mental and Emotional Health

The defendant has no mental or emotional problems now or for which he has ever received treatment.

### Substance Abuse

Reyes has no history of using illegal substances or abusing alcohol. He describes his alcohol consumption of maybe a beer a week.

### Education and Vocational Skills

He began attending high school at the age of 16 in Hayward, California. This was soon after arrival from Mexico to live with his stepbrother. During his first six months in school he was learning English through the high schools ESL (English as a Second Language) classes. Eventually he began the regular class curriculum and at age 18 graduated from Tennyson High School with a grade point average of 3.9.

After graduating from high school Reyes began attending Heald College, receiving his Associates Degree in Applied Science/Information Technology. He then continued his education graduating in 2007 from DeVry University with a Bachelor of Arts degree in Information Technology Management.

### Employment Record

Soon after high school and will attending college, Reyes worked for Walmart. After graduating from DeVry University in 2007, Reyes began working for Mighty Micro selling computer components. He left there after a few months to work for Xalisco Produce Distributors in their IT department. Then in 2008, Reyes obtained employment with Yahoo, Inc. in Sunnyvale, California. He remained employed with them as a computer engineer until his dismissal due to the present matter.

### Financial Condition

The $560,000 of assets held by Reyes includes his home valued at $469,000. His liquid assets amount to cash in the bank, $30,000 stocks, $34,000 IRA (Roth) and $100,000 retirement (401 k). Since his dismissal from Yahoo, Inc. Reyes has been looking for work but was only able to get temporary, low paying employment. He was able to receive $450 per week in unemployment for several weeks before it ran out. His wife started working in September 2019 with a janitorial company cleaning offices for $15 per hour.

He lists their combined average monthly income at approximately $2,199 and expenses of $4,830, which results in a negative cash flow of $2,630 per month. Therefore during any period of incarceration his wife will live on her income and their savings.

### Defendant's Ability to Pay a Fine

Restitution is an issue and Reyes will be required to pay an amount, which will stretch him financially. A fine is not recommended.

The Fine Table at USSG 5E1.2 (c) (3) shows a fine range of $10,000-$95,000 for an offense level of 17. The defendant would not be able to pay a fine due to his commitment toward restitution.

### PART D.   SENTENCING CONSIDERATIONS

**Custody**

**Statutory Provisions**: The maximum term of imprisonment is 5 years.

**Guideline Provisions:** Based on an offense level of 17 and a criminal history category of I the guideline range for imprisonment is 24-30 months.

**Provisions for a Term of Probation or Supervised Release**

Under the guidelines probation is not authorized, except by way of a downward departure or variances under 18 USC 3553, because the minimum guideline range is in Zone D. Nevertheless, by statute the defendant is eligible for probation and unless extraordinary circumstances exist, the Court is to impose as a condition of probation a fine, restitution or community service.

A maximum term of supervised release is 3 years is authorized by the guidelines and statue.

### PART E.   FACTORS THAT MAY WARRANT DEPARTURE

*"The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted."* (See *USSG 1A.4 (b) – Departures*)

The case at bar does not appear to be a "heartland" case. Although the plea agreement precludes departures being argued to the Court, Reyes is not a "typical" case based on his conduct and background.

### PART F.   OTHER FACTORS TO BE CONSIDER

The Supreme Court in rulings found in Nelson v. United States, 129 S.CT. 890, reiterated the rule, articulated in *Rita* and *Gall* that "district judges, in considering how various statutory sentencing factors apply to an individual defendant, 'may not presume that the Guidelines range is reasonable.' Also, as this Court knows, in Booker v. United States, 125 S. Ct 738, the Supreme

Court required severance of the Federal Sentencing Act's (Act) provisions making guidelines mandatory. Therefore the Courts may now sentence in ways less restrained than the past. So modified, the Act makes the Guidelines effectively advisory, requiring a sentencing court to consider Guidelines ranges but permitting it to tailor the sentence in light of other statutory concerns, specifically the seven categories in Title 18 U.S.C. 3553(a),

1- The nature and circumstances of the offense and the history and characteristics of the offender,
2- The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner,
3- The kind of sentences available,
4- The kinds of sentence and sentencing range established by the Sentencing Commission in the Sentencing Guidelines,
5- The pertinent policy statements issued by the Sentencing Commission,
6- The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct and
7- The need to provide restitution to any victims of the offense.

After *Booker* the sentencing range called for by the Guidelines is but one factor among many relevant to the sentencing decision. *See 18 U.S. C. 3553 (a) (4)*. Importantly Section 3553(a) creates no order of priority among listed factors; its plain language and structure indicate that each is to be treated equally and that each must be considered.

There are several factors that this Court should consider in sentencing this defendant. One consideration is this defendant has a Criminal History Category of I. Many others with the same Category have at least one criminal conviction. This defendant has never been arrested, much less had a conviction. For this defendant to be categorized with those who have criminal records would seem to call for him to receive a lesser punishment.

Additionally, there are no programs available in the federal criminal justice system that benefit persons like Reyes who have no prior record. Congress has only seen fit to pass legislation that allows program for drug offenders, the elderly and others under the recent First Step Act and other previously passed Congressional Acts. But for first time, non-violent offenders there are no such consideration.

Reye's risk of recidivism is very low. Long prison sentences increase the risk of recidivism in low-risk offenders by disrupting their social relationships and keeping them out of the workforce. (See Christopher T. Lowenkamp and Edward J. Latessa, *Understanding the Risk Principle: How and Why Correctional Interventions Can Harm Low-Risk Offenders, Topics in Community Corrections* - 2004, at 7-8 (2004)). An unduly lengthy prison sentence would thus be counter-productive. It would also cripple Reyes' future, as well as that of his wife, Alicia. He is essentially a "rags to riches" individual who came from a very poor background, worked hard in school and was able to eventually secure meaningful employment and promote through dedicated, hard work. He then made poor choices to look at videos of unsuspecting women's email accounts for personal gratification. He would have been considered years ago as essentially a "peeping Tom". Reyes should be considered as one of the least likely offenders to recidivate.

Additionally this defendant has no substance abuse history, is emotionally stable and has the support of his wife, family and friends. There is no evidence or any reason to believe the defendant has ever attempted to harm anyone, including the victims in this matter. He is held in high esteem and supported by those who know him, as evident in his character letters.

This defendant's case appears to be out of the "heartland" for reason previously stated in this report. He possessed materials that were looked at only by him and never released or sold to anyone else. He should not have done it but fortunately he did not expose it to anyone else. He is now a felon with limited opportunities to return to a career he spent so much of his life qualifying for.

This defendant is amenable to treatment should the Court impose that as a special condition of his release.

The 18 U.S.C. 3553(a) factors support a lessor sentence than the Guidelines suggest in this case. A sentence of five years' probation with Electronic Monitoring for 12 months, with probation's standard and special conditions appear appropriate. This would restrict him, providing further punishment but allowing him to continue seeking employment and maintain it once it is secure. It is a sentence that properly balances all of the competing considerations.

## JUSTIFICATION AND RECOMMENDATION

**TOTAL OFFENSE LEVEL: 17**

**CRIMINAL HISTORY CATEGORY: I**

|  | **Statutory Maximum** | **Guideline Provisions** | **Recommended Sentence** |
|---|---|---|---|
| CUSTODY: | 5 years | 24 to 30 months | Downward variance |
| PROBATION: | 3 years | 1 to 3 years | 60 months probation; w/12 months home confinement (EM); |
| SUPERVISED RELEASE: | 3 years | 1-3 years | 0 years |
| FINE: | $250,000 | $10,000 - $95,000 | $0 |
| RESTITUTION: | N/A | N/A | $115,957.01 |
| SPECIAL ASSESSMENT: | $100 | $100 | $100 |

### Justification

Before the Court for sentencing is a 34-year man who had previously never been in trouble with the law and is well respected by his family and friends. Although he had a rather poor childhood, he has taken proper advantage of the opportunities afforded him. Except for this lapse of judgment Reyes was well on his way to have a successful career. He can recover and become a productive citizen again if given the opportunity. He continues to have the support of his wife, family and friends. He finds himself before the Court for sentencing having let down his guard to the temptations of pornography through illegal means. There is no evidence to support that he went outside of his charged behavior nor did he attempt to contact the victims. His crime is for seeking after and viewing sexually explicit videos and images without permission.

The defendant is not viewed as a risk to the community and is amenable to treatment, should the Court so order. This can be accomplished through counseling while in the community. The defendant has strong family and community support.

It would seem appropriate to place this defendant on probation supervision, with the prohibitions available to the Court to monitor his behavior and allow for community treatment. This would appear to meet the ends of justice and allow a good person to live his life in a restricted environment yet allow him to remain in society as a productive individual.

**Recommendation:**

It is respectfully recommended that the following sentence be imposed:

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Reyes D. Ruiz, is placed on supervised probation for a term of 5 years. The defendant is to pay a special assessment of $100, to be paid immediately.

While on probation supervision the defendant is comply with the standard conditions of probation and special conditions as ordered.

Respectfully submitted

Robert W. Storey
Sentencing Consultant *

### *Resume*

**Education:**

Bachelor of Arts: Social Work, California State University, Sacramento
Masters of Arts: Administration of Justice, California State University, Sacramento

**Experience:**

*Consultant/Investigator* (Present)

* Consult and investigate for criminal and civil attorneys
* Investigate federal and state offenses for defense attorneys
* Prepare alternative presentence reports on federal guideline and state cases
* Analyze and prepare federal sentencing guidelines for defense attorneys
* Recipient of National Guideline Training intermittently from 1984 - Present
* Investigate and prepare mitigation reports

*United States Probation Officer* (27 years)
Eastern District of California

* Supervisor of Court and Supervision Units
* Senior Sentencing Guideline Specialist
* Guideline Trainer to District Probation Officers
* Graduate of Leadership Development Program

*Administrator - Community Corrections Center* (2 years)

* Provide programs for BOP inmates returning to the community
* Prepare reports for the Courts, Parole Commission and BOP on inmate behavior
* Monitor inmate activities in the residential facility and community
* Coordinate transition from CCC to community with U.S. Probation Officer
* Supervise and train staff employed by the CCC

*Parole Aide*
California Youth Authority (2 years)

*Intelligence Analyst*
United States Air Force (4 years)

**References** - Available Upon Request